UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 06-2182
(3:05-cv-00072-jbl)

STEVEN ROSENFIELD; EDWARD M. WAYLAND,

Plaintiffs - Appellants,

versus

THE HONORABLE WILLIAM W. WILKINS, acting in
his official capacity as Chief Judge of the
United States Court of Appeals for the Fourth
Circuit,

Defendant - Appellee.

O R D E R

The court amends its opinion filed May 28, 2008, as follows:

On page 3, line 13 -- "prospectI've" is replaced with the word "prospective."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 06-2182**

───────────

STEVEN ROSENFIELD; EDWARD M. WAYLAND,

                                    Plaintiffs - Appellants,

        versus

THE HONORABLE WILLIAM W. WILKINS, acting in
his official capacity as Chief Judge of the
United States Court of Appeals for the Fourth
Circuit,

                                    Defendant - Appellee.

───────────

Appeal from the United States District Court for the Western
District of Virginia, at Charlottesville.  James B. Loken, Chief
Judge of the United States Court of Appeals for the Eighth Circuit,
sitting by designation.  (3:05-cv-00072-jbl)

───────────

Argued:  February 1, 2008              Decided:  May 28, 2008

───────────

Before NIEMEYER and DUNCAN, Circuit Judges, and T. S. ELLIS, III,
Senior United States District Judge for the Eastern District of
Virginia, sitting by designation.

───────────

Affirmed by unpublished opinion.  Judge Duncan wrote the opinion,
in which Judge Niemeyer and Senior Judge Ellis concurred.

───────────

**ARGUED:** Victor Michael Glasberg, VICTOR M. GLASBERG & ASSOCIATES,
Alexandria, Virginia; Steven David Rosenfield, Charlottesville,
Virginia, for Appellants.  Thomas Linn Eckert, OFFICE OF THE UNITED
STATES ATTORNEY, Roanoke, Virginia, for Appellee.  **ON BRIEF:**
Rebecca K. Glenberg, AMERICAN CIVIL LIBERTIES UNION OF VIRGINIA

FOUNDATION, INC., Richmond, Virginia; Edward M. Wayland, Montgomery, Alabama, for Appellants. John L. Brownlee, United States Attorney, Roanoke, Virginia, for Appellee.

————————

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Court-appointed attorney Steven Rosenfield appeals the district court's dismissal of this putative class action against William W. Wilkins in his official capacity as Chief Judge of the United States Court of Appeals for the Fourth Circuit. Rosenfield's complaint alleges that the Fourth Circuit has failed to provide adequate procedural protections in connection with the calculation of fee awards under the Criminal Justice Act, in violation of the due process clause of the Fifth Amendment.

While we appreciate the service provided by all court-appointed attorneys, and although we are sympathetic to Rosenfield's concerns in particular, we find that recently implemented changes to this court's review of CJA awards provide the prospective relief sought and substantially moot the appeal. We also find that retroactive application of the new procedures to Rosenfield's award is not required by the Constitution. We therefore affirm the district court's dismissal for failure to state a claim upon which relief can be granted.

I.

A.

The Criminal Justice Act of 1964 ("CJA," or the "Act"), 18 U.S.C. § 3006A, entitles indigent defendants charged with certain federal offenses to appointed counsel. The CJA contemplates that,

in a "substantial proportion" of cases under the Act, private attorneys will accept the courts' appointment, though bar associations and other organizations may supply counsel as well. § 3006A(a)(3). The CJA also governs the payment of those attorneys who accept a CJA appointment. The Act expressly provides that an "appointed attorney shall . . . be compensated . . . for time reasonably expended." § 3006A(d)(1). At the conclusion of the representation, the appointed attorney may seek compensation by filing a claim "supported by a sworn written statement specifying the time expended, services rendered, and expenses incurred" in the course of the representation. § 3006A(d)(5). The "claim for compensation and reimbursement shall be made to the . . . appellate court before which the attorney provided representation to the person involved." Id. Ultimately, each such court "shall fix the compensation and reimbursement to be paid to the attorney." Id. The hourly rate of compensation is statutorily defined,[1] but is

_____

[1]Certain special provisions apply to representation provided to capital defendants. See 18 U.S.C. § 3599. For example, § 3599(g) limits compensation to appointed counsel in capital cases to "a rate of not more than $125 per hour for in-court and out-of-court time." 18 U.S.C. § 3599(g)(1). Though not codified in the same section as the remainder of the Act, we treat the provisions of 18 U.S.C. § 3599 as being substantively part of the CJA. Section 3599 finds its origins in a 1988 congressional amendment to the continuing criminal enterprise statute, altered to provide for the appointment and compensation of attorneys and experts to represent indigent defendants in capital cases. See 21 U.S.C. § 848(q)(4)-(10) (1988) (repealed 2006). Congress has since transferred these provisions to 18 U.S.C. § 3599 without substantive change. See USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, § 222, 120 Stat.

4

subject to periodic upward adjustments by the Judicial Conference of the United States.[2]

The CJA is silent, however, regarding the availability of judicial review of the compensation fixed by the courts hearing from CJA-appointed counsel. In particular, the CJA does not describe any avenues available to an appointed attorney who receives a compensation award that is less than the amount requested in the attorney's filing and sworn statement.

Within the broad framework it establishes, the CJA requires each federal district court, with the approval of the judicial council of the circuit,[3] to adopt a plan for implementing the Act. See § 3006A(a). The Judicial Conference provides instruction to

_____

192, 231-32 (2006).

[2]The Judicial Conference of the United States is a body of judges, constituted by statute, whose "fundamental purpose . . . is to make policy with regard to the administration of the U.S. courts." Judicial Conference of the United States, http://www.uscourts.gov/judconf.html. The body comprises the Chief Justice of the United States, "the chief judge of each judicial circuit, the chief judge of the Court of International Trade, and a district judge from each judicial circuit" who meet annually to make such policy decisions. 28 U.S.C. § 331.

[3]Like the Judicial Conference of the United States, the "judicial council" in each circuit is a policy-making body responsible for "mak[ing] all necessary and appropriate orders for the effective and expeditious administration of justice within its circuit." 28 U.S.C. § 332(d)(1). The judicial council comprises the chief judge of the circuit, "and an equal number of circuit judges and district judges of the circuit." Id. § 332(a)(1).

5

courts for the creation and maintenance of a plan.[4]  See Guidelines for the Administration of the Criminal Justice Act and Related Statutes (the "CJA Guidelines"), http://www.uscourts.gov/defenderservices/Section_A.cfm. The Fourth Circuit has adopted such a plan for implementing the CJA with respect to appointed representation on appeal.  See Plan of the United States Court of Appeals for the Fourth Circuit In Implementation of the Criminal Justice Act (Sept. 17, 2007) (the "Plan"), http://www.ca4.uscourts.gov/pdf/CJAPlan.pdf.

Both the Plan and the CJA Guidelines govern compensation of appointed attorneys who appear before the Fourth Circuit Court of Appeals.[5]  According to the Plan, appointed counsel must submit, at the conclusion of representation, a voucher for compensation and reimbursement.  See Plan, Part VI (1).  The Plan explains that "[t]he clerk will determine the amount of compensation and reimbursement to be paid.  The approved voucher will then be

---

[4]The Judicial Conference Committee on Defender Services is tasked with providing "general policy guidance in interpretation and application of the Criminal Justice Act and related statutes." Judicial Conference of the United States, Jurisdictional Statements (March 12, 2007) available at http://www.uscourts.gov/judconf_jurisdictions.htm#Defender.  This includes "approving non-controversial revisions" to the CJA Guidelines and "recommending approval to the Judicial Conference for other amendments to these guidelines."  Id.

[5]The Plan incorporates the CJA Guidelines and its amendments. See Plan, Part VII (1) ("This Plan shall be subject to and held to have been amended pro tanto by any rule or regulation adopted by the Judicial Conference of the United States concerning the operation of plans under the [CJA].").

6

reviewed by the Circuit Executive, signed by the Chief Judge, and forwarded to the Administrative Office for payment or further handling." Id.

Just as the CJA itself is silent regarding appeals of awards that are smaller than the requested amount, so too were the Plan and the CJA Guidelines silent at the time Rosenfield initiated this suit. The CJA Guidelines have since been amended, however. In March 2006, the Judicial Conference approved a CJA guideline regarding decisions to authorize payments of less than the amounts requested. See Report of the Proceedings of the Judicial Conference of the United States 15-16 (Mar. 14, 2006), at 15-16, http://www.uscourts.gov/06MarProceedings.pdf. The CJA Guidelines now provide that "[i]f the court determines that a claim should be reduced, appointed counsel should be provided (a) prior notice of the proposed reduction with a brief statement of the reason(s) for it, and (b) an opportunity to address the matter." CJA Guidelines § 2.22. The Judicial Conference's addition of this language to § 2.22 simultaneously incorporated the guideline into the Fourth Circuit's Plan. See Plan, Part VII (1).

B.

Rosenfield was appointed pursuant to the CJA to represent an indigent inmate on Virginia's death row in federal habeas corpus petitions before the Fourth Circuit and the United States Supreme Court, and in a petition for clemency to the Governor of Virginia.

7

At the conclusion of representation, Rosenfield submitted a voucher requesting compensation of $35,456.25 for "time reasonably expended" working on the case, based upon $125 per hour, the statutory maximum rate for work on capital cases at that time.[6] See 21 U.S.C. § 848(q)(10)(A) (1988) (repealed 2006). Rosenfield's voucher was reviewed first by the Circuit Executive's Office. Next, the request was reviewed by each of the circuit judges on the hearing panel. Finally, the hearing panel forwarded its recommendations to the chief circuit judge for a third and final review. Then-Chief Judge Wilkins approved payment for only $10,000. J.A. 25-26. Rosenfield moved for reconsideration of the Chief Judge's decision and also petitioned for an en banc review of the fee award. Both requests were denied without explanation. J.A. 64.

Rosenfield then filed this action in the District Court for the Western District of Virginia, alleging that the Fourth Circuit's then-effective procedures for compensating appointed attorneys under the CJA violated his Fifth Amendment right to procedural due process because requests for compensation could be reduced without (1) an explanation of why the request was not paid in full, (2) notice as to what work would or would not be compensated, and (3) rules or procedures permitting a lawyer to

[6]Petitioner Edward M. Wayland, Rosenfield's law partner at the time, also worked on the case. Rosenfield's voucher included a claim for compensation for time spent by Wayland.

seek review of the amount awarded. Rosenfield's complaint seeks declaratory and injunctive relief requiring this court to implement procedural safeguards like those adopted by the Judicial Conference, and reconsideration of his voucher under the new procedures.

District Court Judge Norman K. Moon, initially assigned to this case, recused himself sua sponte, noting the appearance of impropriety that might be present in his rendering a decision in a case involving Judge Wilkins, who regularly hears appeals from the district court judges in the Fourth Circuit. Ultimately, Chief Judge James B. Loken, United States Court of Appeals for the Eighth Circuit ("Chief Judge Loken"), accepted an intercircuit designation and assignment to act as a district court judge in this matter. See 28 U.S.C. § 291.

Judge Wilkins moved for dismissal on the grounds that the court lacked jurisdiction to hear the case and that the complaint did not state a claim upon which relief might be granted. See Fed. R. Civ. P. 12(b)(6). After the motion to dismiss had already been fully briefed, Rosenfield filed a motion asking Chief Judge Loken to recuse himself. In a memorandum opinion, Chief Judge Loken, invoking the "Rule of Necessity," see United States v. Will, 449 U.S. 200, 213-16 (1980), denied the motion to recuse.[7] He also

---

[7]Rosenfield raises this issue again on appeal. He argues that Chief-Judge Loken's impartiality "might reasonably be questioned," 28 U.S.C. § 455(a), because (1) as a chief circuit judge, Chief

9

granted the motion to dismiss, finding that, since Rosenfield did not enjoy a property right in the specific amount he requested as a CJA award, he had no due process cause of action under <u>Bivens v. Fed. Narcotics Agents</u>, 403 U.S. 388 (1971), which held that private citizens have a federal cause of action for damages against federal agents who violate Fourth Amendment rights.

## II.

As a threshold matter, we first consider whether we, and the district court below, may properly exercise subject-matter jurisdiction over this action. Of course, "every appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review." <u>Bender v. Williamsport Area Sch. Dist.</u>, 475 U.S. 534, 541 (1986) (internal quotations omitted). The obligation is all the more pressing here, where the appeal indirectly challenges an administrative, and not a judicial, determination of the court.

Judge Loken is "personally involved in policy-making and administrative practices relating to attorney compensation under the CJA," J.A. 6-7, and (2) Chief Judge Loken makes CJA compensation decisions under the Eighth Circuit Plan, which is procedurally similar to the Fourth Circuit Plan. Rosenfield has failed, however, to distinguish Judge Loken's fee-determining authority under the CJA from that of every other Article III judge who may be called upon to review CJA vouchers. Nor has Rosenfield identified a single federal judge who would not be subject to the conflict he alleges. We therefore hold that Chief Judge Loken did not abuse his discretion in invoking the "Rule of Necessity." <u>See</u> <u>Sales v. Grant</u>, 158 F.3d 768, 781 (4th Cir. 1998).

Challenges to CJA awards usually arise under the aegis of the case in which the appointed representation was rendered in the form of an appeal of an order issued by the district court or a petition for rehearing. See, e.g., United States v. Smith, 633 F.2d 739 (7th Cir. 1980) (appealing a determination by the district court disallowing attorney fees in excess of maximum amount fixed by CJA); United States v. Melendez-Carrion, 811 F.2d 780 (2d Cir. 1987) (petitioning for review of a decision by a circuit judge that reduced the compensation sought by counsel for services provided pursuant to the CJA). In that context, where appointed counsel has sought review of an award from a court other than the court in which the representation of the indigent defendant occurred, courts have held that fee determinations under the CJA are administrative actions and the discretion to amend or review CJA awards rests entirely with the court presiding over the underlying criminal case. See United States v. Linney, 134 F.3d 274, 281 (4th Cir. 1998); see also, United States v. Walton (In re Baker), 693 F.2d 925, 926-27 (9th Cir. 1982) (per curiam) ("[O]rders of the district courts establishing the amount of attorneys fees under the [CJA] are not appealable."); United States v. Rodriguez, 833 F.2d 1536, 1537 (11th Cir. 1987) (per curiam) ( CJA fee determination are "simply an administrative action on the part of the judge, rather than a decision of a judicial character," and thus not appealable); In re Gross, 704 F.2d 670, 673 (2d. Cir. 1983) (opinion of Chief

11

Judge Feinberg) ("[T]he chief judge of a circuit has no power to entertain an appeal from a denial of certification of excess payment by the court in which the representation is rendered."); Smith, 633 F.3d at 742 ("[A] determination by a district court disallowing fees in excess of the maximum limit under the [CJA] is not a reviewable order."); Melendez-Carrion, 811 F.2d at 782 ("[A]n appeal from a decision of one circuit judge regarding compensation under the [CJA] can be brought to the panel that heard the appeal.").

The case before us, however, posits a due process violation arising out of a request for compensation, and does not challenge the underlying administrative decision regarding the appropriate amount of fees. Because Rosenfield only challenges the adequacy of the process he received, case law analyzing the question of jurisdiction in the context of a direct appeal of an administrative order is not determinative of the question of jurisdiction here. Therefore, we must start afresh to consider the district court's jurisdiction to entertain a constitutional challenge to an administrative action by a judicial officer.

Rosenfield contends that the district court had jurisdiction under 28 U.S.C. § 1331, which grants "[t]he district courts . . . original jurisdiction of all civil actions arising under the

12

Constitution, laws, or treaties of the United States."[8]  Since his

action alleges denial of a property interest in violation of the

due process clause of the Fifth Amendment, Rosenfield argues that

§ 1331 plainly conferred to the district court jurisdiction over

the action.

The import of § 1331 is well-settled.  Under the provision,

"Congress has given the lower federal courts jurisdiction to hear

'only those cases in which a well-pleaded complaint establishes

either that federal law creates the cause of action or . . . that

the plaintiff's right to relief necessarily depends on resolution

of a substantial question of federal law.'"  Interstate Petroleum

Corp. v. Morgan, 249 F.3d 215, 219 (4th Cir. 2001) (en banc)

(quoting Franchise Tax Bd. v. Const. Laborers Vacation Trust, 463

U.S. 1, 27 (1983)).  A complaint presents a question of federal law

when the right to recovery under the complaint "will be supported

if the Constitution or laws of the United States are given one

construction or effect, and defeated if they receive another."

Gully v. First Nat. Bank, 299 U.S. 109, 112 (1936).

Rosenfield alleges that compensation under the CJA is a

protected property interest and that the Fourth Circuit's fee

---

[8]Rosenfield also claimed jurisdiction in the district court based on Bivens.  The district court concluded, however, that Rosenfield could not assert a cause of action under Bivens. Because we find jurisdiction proper under § 1331, we decline to address the question of whether Rosenfield has properly alleged a cause of action under Bivens.

13

approval process violates his procedural due process rights in such compensation under the Fifth Amendment. On its face, the complaint clearly establishes that the cause of action is predicated upon an alleged constitutional violation. Whether Rosenfield is entitled to recovery depends upon two questions; (1) an interpretation of 18 U.S.C. § 3006A(d) as to the existence of a property interest; and (2) a determination of the scope of the Fifth Amendment's protection against deprivations of property without due process of law. Therefore, the complaint plainly raises a question of federal law, which a district court could only decide after it had assumed jurisdiction. Bell v. Hood, 327 U.S. 678, 682 (1946) ("[T]he court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief . . . [f]or it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.").

We hold, therefore, that the district court had jurisdiction over Rosenfield's Fifth Amendment claims pursuant to 28 U.S.C. § 1331 and that this court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. See Blanck v. McKeen, 707 F.2d 817 (4th Cir. 1983) (per curiam) (allowing cause of action arising under Fifth Amendment with jurisdiction based on § 1331); Roth v. King, 449 F.3d 1272, 1280 (D.C. Cir. 2006) (holding that the

14

district court had jurisdiction over appellees' Fifth Amendment claim pursuant to 18 U.S.C. § 1331).[9]

### III.

Having satisfied ourselves that we properly exercise subject-matter jurisdiction over this type of appeal generally, we are nevertheless compelled to consider whether we retain jurisdiction over this specific action in light of the March 2006 amendments to the CJA Guidelines. Though neither party has raised the issue, we note that we lack jurisdiction "to decide questions that cannot affect the rights of litigants in the case before [us]," North Carolina v. Rice, 404 U.S. 244, 246 (1971) (per curiam). Because it appears that the amended CJA Guidelines provide the kind of relief going forward that Rosenfield seeks, we are obligated to consider whether the amendments moot his appeal; see Friedman's, Inc. v. Dunlap, 290 F.3d 191, 197 (4th Cir. 2002) (considering mootness sua sponte). "But we need not decide whether this development moots the case in strict constitutional case or

---

[9]The analysis in Roth is particularly germane to the instant appeal. In Roth, a class of attorneys seeking injunctive and declaratory relief brought an action under the Fifth Amendment against judges of the Superior Court responsible for devising and implementing a system for appointment of attorneys who would be eligible to receive compensation under the CJA. The complaint challenged the Superior Court's attorney appointment system, alleging a property interest in their existing practice before the court and that the appointment system violated the Fifth Amendment by "taking" this property without due process of law. Id. at 1278-79.

controversy terms, because we conclude that we should treat this appeal as moot for prudential reasons." S-1 v. Spangler, 832 F.2d 294, 297 (4th Cir. 1987); Nationwide Mut. Ins. Co. v. Burke, 897 F.2d 734, 739 (4th Cir. 1990) ("prudential considerations compel us to declare the declaratory judgment action . . . mooted by intervening events.").

In essence, Rosenfield's complaint contends that because the CJA confers a property interest in compensation for time reasonably expended by court-appointed attorneys, the Due Process Clause requires that attorneys be given the basic elements of fundamental fairness. He complains that the Fourth Circuit Plan offers no published standards governing fee awards and no rules or procedures for seeking an explanation of the reasons for the amount awarded or review of the chief judge's decision.

With the adoption of new language in § 2.22, however, the Plan now requires that if a court decides to reduce a requested claim, counsel should be provided "a) prior notice of the proposed reduction with a brief statement of the reason(s) for it, and (b) an opportunity to address the matter." CJA Guidelines § 2.22. As regards the injunctive relief that he seeks, Rosenfield admits that this very language in § 2.22 "could well have been drafted by Rosenfield," Reply Br. at 6. The procedural safeguards provided for in § 2.22 therefore adequately address the concerns raised in Rosenfield's complaint. To the extent that Rosenfield seeks

16

promulgation of new rules and procedures in the Fourth Circuit, and these rules in particular, "we should not engage in what would be a meaningless adjudication of an issue of considerable difficulty, and we decline to do so." Nationwide, 897 F.3d at 739. (internal quotations omitted); see also Spangler, 832 F.2d at 297 (declining to adjudicate claim when "the specific relief sought . . . no longer has sufficient utility to justify decision of th[e] case on the merits."). Because the challenged aspects of the Plan have been remedied, Rosenfield's claims for prospective injunctive relief are moot.

IV.

As we have described, Rosenfield, and, indeed, all CJA attorneys, will enjoy the procedural protections articulated in § 2.22 for the able service they provide in this court going forward. The only remaining issue before us is whether the requests for compensation for fees and expenses submitted by Rosenfield should be reconsidered under the new guideline.[10] Before we can find that an injunction requiring a retroactive hearing is appropriate, we consider, assuming that Rosenfield has suffered the

_____

[10]Our consideration of this issue is wholly distinct from a review of Rosenfield's underlying fee award. We provide no independent forum outside the administrative process to challenge the fee award. See Linney, 134 F.3d at 281(Only "the court in which the representation of the indigent defendant occurred [has] the authority to fix the compensation and reimbursement to be paid.").

17

deprivation of a constitutionally protected property interest, which is not at all clear, whether the process Rosenfield received was constitutionally sufficient.[11]  See United States v. Al-Hamdi, 356 F.3d 564, 574-75 (4th Cir. 2004) (assuming arguendo that a liberty or property interest exists and proceeding to the question of whether the procedures afforded were constitutionally sufficient).

Because Rosenfield contends that § 2.22 satisfies the procedural protections owed to CJA attorneys whose fees are reduced, we first compare the process Rosenfield received with the process provided in § 2.22.  To the extent that Rosenfield did not receive the procedural safeguards provided in § 2.22, we consider whether the absence of such procedures violated his due process rights.

---

[11]"[W]e pose two questions when reviewing a claimed procedural due process violation: '[W]hether there exists a liberty or property interest, which has been interfered with by the State, [and] whether the procedures attendant upon that deprivation were constitutionally sufficient." Slade v. Hampton Rds. Reg'l Jail, 407 F.3d 243, 253 (4th Cir. 2005) (quoting Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (citations omitted)) (second alteration in original).  We decline to decide the issue of whether the CJA confers a property interest in fee awards because we find, assuming that such a property interest exists, that Rosenfield received constitutionally adequate procedural protections.

18

Rosenfield submitted vouchers to this court requesting reimbursement in the amount of $38,393.75.[12] A court order signed by then-Chief Judge Wilkins approved, without explanation, an award amounting to $10,000. As communicated to Rosenfield in a letter from the Circuit Executive, Rosenfield's voucher underwent a three-step review process, which included review by (1) the Circuit Executive's Office, (2) the circuit judges on the hearing panel, and finally (3) the chief circuit judge, who made the final decision. Rosenfield then moved for reconsideration of the award, explaining in detail why the hours spent on the case were necessary and the reason he was entitled to the fee he requested. The court denied the motion without explanation. Rosenfield then petitioned for an en banc administrative review, which was also denied without explanation.

By way of comparison, § 2.22 states that if the court determines that a claim should be reduced, the appointed counsel should be provided with prior notice of the reasons for the proposed voucher reduction and an opportunity to respond. "The guideline specifically endorses informality and flexibility in both communication of the notice and in the evaluation of the

---

[12]This figure includes $35,456.25 in fees and $2,937.50 in out of pocket expenses.

justification offered by counsel; no hearing formal or otherwise is required."  Judicial Conference Mem. (April 7, 2006).

The court order authorizing payment put Rosenfield on notice of the voucher reduction.  In filing a motion for reconsideration and petition for rehearing, Rosenfield received not just one opportunity to respond, but two.  On two separate occasions the court reviewed Rosenfield's detailed justification for the compensation he requested.  Therefore, it seems that the only procedural safeguard that Rosenfield would have liked, but that he did not receive was an explanation for the reduction in the fees he requested.

B.

We now consider, then, the narrow question of whether the court's failure to provide an explanation for the voucher reduction violated Rosenfield's right to procedural due process.  The essential requirements of procedural due process are notice and an opportunity to be heard.  See <u>Joint Anti-Facist Refugee Comm. v. McGrath</u>, 341 U.S. 123, 178 (1951).  Beyond that minimum requirement, due process is "flexible and calls for such procedural protections as the particular situation demands."  <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972).  The process warranted in a given case depends upon (1) the nature of the private interest, (2) the adequacy of the existing procedure in protecting that interest, and

(3) the governmental interest in the efficient administration of the applicable law. <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976).

First, we examine the nature of the private interest at stake. Even assuming that Rosenfield has a property interest in a CJA fee, "the CJA statute gives the discretion for compensation and reimbursement of CJA appointed attorneys to the court presiding over the underlying criminal case for which the CJA compensation may be awarded." <u>Linney</u>, 134 F.3d at 281. The private interest of the attorney, therefore, is not to the fee requested, but to a reasonable fee set by the court. <u>See</u> 18 U.S.C. § 3006A.

Second, we consider the adequacy of the then-prevailing procedures in protecting Rosenfield's interest. It is helpful in this context to examine how the 2006 amendments altered the procedures regarding the provision of an explanation for a reduction in a requested award. In 2006, the Judicial Conference decided to provide, going forward, an explanation to CJA attorneys when requested awards are reduced. The purpose of providing prior notification and an explanation for the reduction is to promote fairness and efficiency. <u>See</u> Judicial Conference Mem. (April 7, 2006). The explanation for the reduction, therefore, only has bearing on the fairness or efficiency of the voucher review process to the extent that it assists the attorney in his or her response once an initial determination is made. Given the extensive detail in Rosenfield's request for reconsideration and petition for en

21

banc consideration, and the court's discretion in making fee determinations, we fail to see how, under the present circumstances, a contemporaneous explanation of the voucher reduction would have more adequately protected Rosenfield's interests.

Finally, we note, as the third consideration in determining whether Rosenfield was afforded adequate procedure, that the court has a substantial interest in avoiding unnecessary reviews of CJA fee determinations. Where Rosenfield received notification and the court twice evaluated his justification, reconsideration of Rosenfield's voucher under the new rules would serve no useful purpose.

At bottom, we find, assuming that he held a protected property interest in a reasonable fee, that Rosenfield was afforded constitutionally adequate procedural protections in the reduction of his requested award. While we are grateful for the service provided by Rosenfield and other CJA attorneys, and while we are committed to providing the level of review described in the Plan and the updated CJA Guidelines going forward, we cannot say that the careful processing of Rosenfield's award here was constitutionally deficient.

V.

Because we find that Rosenfield has already received sufficient process, the district court's grant of a motion to dismiss for failure to state a claim on which relief can be granted is

AFFIRMED.