FILED
United States Court of Appeals
Tenth Circuit

June 18, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ARRIENNE MAE WINZLER, On
Behalf Of Herself And All Others
Similarly Situated,

        Plaintiff - Appellant,

v.

TOYOTA MOTOR SALES U.S.A.,
INC.,

        Defendant - Appellee.

No. 10-4151

---

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 1:10-CV-00003-TC)**

---

Roy A. Katriel, The Katriel Law Firm, Washington, D.C. (James T. Blanch and
Erik A. Christiansen, Salt Lake City, Utah, with him on the briefs), for Plaintiff-
Appellant.

Michael L. Mallow, Loeb & Loeb LLP, Los Angeles, California (Laura A.
Wytsma, Darlene M. Cho, Rachel A. Rappaport of Loeb & Loeb LLP, Los
Angeles, California; David J. Williams of Stoel Rives LLP, Salt Lake City, Utah,
with him on the brief), for Defendant-Appellee.

---

Before **TYMKOVICH**, **SEYMOUR**, and **GORSUCH**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

---

Mootness has many moods. Always the doctrine describes a situation where events in the world have so overtaken a lawsuit that deciding it involves more energy than effect, a waste of effort on questions now more pedantic than practical. In some cases mootness bears a constitutional countenance, acting as a jurisdictional bar against even entertaining a case. Other times mootness carries a more prudential complexion, permitting us to withhold relief we have the authority to grant. Other times still, a case finds itself mooted by a tangle of constitutional and prudential considerations. This case involves mootness in at least its prudential sense. This because our plaintiff seeks equitable relief already being provided by coordinate branches of government and she offers no reason why the courts should duplicate those efforts.

At the beginning, this case had life enough. Arrienne Mae Winzler brought state law claims against Toyota on behalf of a proposed nationwide class of 2006 Toyota Corolla and Toyota Corolla Matrix owners and lessees. She alleged that the cars harbored defective "Engine Control Modules" ("ECMs"), making them prone to stall without warning. As relief, she asked for an order requiring Toyota to notify all relevant owners of the defect and then to create and coordinate an equitable fund to pay for repairs.

But soon things began to turn. Before addressing whether Ms. Winzler's class should be certified, the district court held her complaint failed to state a claim and dismissed it under Fed. R. Civ. P. 12(b)(6). And then, just as Ms.

Winzler began her appeal, Toyota announced a nationwide recall of 2005-2008 Toyota Corolla and Corolla Matrix cars to fix their ECMs. The ongoing recall is taking place under the auspices of the National Traffic and Motor Vehicle Safety Act ("Safety Act" or "Act"). That statute obliges Toyota to notify owners of the defect and repair or replace any faulty parts at no cost. 49 U.S.C. §§ 30118(c), 30120. And the whole process is overseen by the National Highway Transportation Safety Administration ("NHTSA"), an agency of the Department of Transportation that can issue stiff fines if the company fails to carry out the recall to its satisfaction. Arguing that these statutory and regulatory processes promise Ms. Winzler exactly the relief sought in her complaint, Toyota has asked this court to find that events have overtaken her suit and rendered it moot.

Whether, when, and to what degree mootness can boast of being a constitutional command, a true jurisdictional limit on the federal courts, has taxed great minds. *Compare Honig v. Doe*, 484 U.S. 305, 329-32 (1988) (Rehnquist, J., concurring) (arguing mootness is exclusively prudential), *with id.* at 339-42 (Scalia, J., dissenting) (arguing mootness has a constitutional component); *see also* Evan Tsen Lee, *Deconstitutionalizing Justiciability: The Example of Mootness*, 105 Harv. L. Rev. 603 (1992). But of at least this much we can be sure: claims for equitable relief, like the injunction Ms. Winzler seeks in this lawsuit, appeal to the "remedial discretion" of the courts. *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997). This remedial discretion

necessarily includes the power to "mould each decree to the necessities of the particular case." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944). And inhering in that power is the concomitant power to deny relief altogether unless "the moving party [can] satisfy the court that relief is needed." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). After all, if events so overtake a lawsuit that the anticipated benefits of a remedial decree no longer justify the trouble of deciding the case on the merits, equity may demand not decision but dismissal. When it does, we will hold the case "prudentially moot." Even though a flicker of life may be left in it, even though it may still qualify as an Article III "case or controversy," a case can reach the point where prolonging the litigation any longer would itself be inequitable. *See* 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3533.1 at 725 (3d ed. 2008); *S-1 v. Spangler*, 832 F.2d 294, 297 (4th Cir. 1987) (case prudentially moot because the relief sought "no longer has sufficient utility to justify decision . . . on the merits").

Prudential mootness doctrine often makes its appearance in cases where a plaintiff starts off with a vital complaint but then a coordinate branch of government steps in to promise the relief she seeks. Sometimes the plaintiff will seek an injunction against the enforcement of a regulation the relevant agency later offers to withdraw on its own. Sometimes the plaintiff will seek an order forcing a department to take an action that it eventually agrees to take voluntarily.

However it comes about though, once the plaintiff has a remedial promise from a coordinate branch in hand, we will generally decline to add the promise of a judicial remedy to the heap. While deciding the lawsuit might once have had practical importance, given the assurances of relief from some other department of government it doesn't any longer. *See, e.g.*, *S. Utah*, 110 F.3d at 727 (prudential doctrine has "particular applicability . . . where the relief sought is an injunction against the government"); *Bldg. & Constr. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1492 (10th Cir. 1993); *New Mexico ex rel. N.M. State Highway Dep't v. Goldschmidt*, 629 F.2d 665, 669 (10th Cir. 1980); *Chamber of Commerce v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980) ("In some circumstances, a controversy, not actually moot, is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand").

To be sure, promises of reform or remedy aren't often sufficient to render a case moot as a constitutional matter. That's because the risk always exists that, as soon the court turns its back, the defendant might renounce his promise and "return to his old ways." *W.T. Grant*, 345 U.S. at 632; *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). But even when the risk of recalcitrance is injury enough to keep the case alive as an Article III matter, it isn't necessarily enough to avoid the application of prudential mootness doctrine. That's because any party invoking the equitable

remedial powers of the federal courts must still "satisfy the court that [requested] relief is needed," and when it comes to assessing that question, a remedial promise always qualifies as "one of the factors to be considered." *W.T. Grant*, 345 U.S. at 632-33. Though a remedial promise may not be enough to kill a case constitutionally, it can be enough to bring it to an end all the same as a matter of equity.

The weight a remedial promise plays in the equitable calculus depends, of course, on who is making the promise and the reliability of that party's past promises. And it should come as no surprise that the remedial commitments of the coordinate branches of the United States government bear special gravity. *S. Utah*, 110 F.3d at 727; *Rockwell Int'l Corp.*, 7 F.3d at 1492; *Chamber of Commerce*, 627 F.2d at 291. Neither do we take governmental promises seriously only because they are generally trustworthy. We also take them seriously because affording a judicial remedy on top of one already promised by a coordinate branch risks needless inter-branch disputes over the execution of the remedial process and the duplicative expenditure of finite public resources. It risks, too, the entirely unwanted consequence of discouraging other branches from seeking to resolve disputes pending in court.

Ms. Winzler's case contains all these traditional ingredients of a prudentially moot case. To be sure, her suit isn't one against the government and in that formal respect differs from many prudential mootness cases. But looking

past form to substance, she has in hand a remedial commitment from our coordinate branches all the same. By filing documents with NHTSA notifying it of a defect, Toyota set into motion the great grinding gears of a statutorily mandated and administratively overseen national recall process. *See* 49 U.S.C. §§ 30118(c), 30120(a). By virtue of its filing, Toyota is now obliged by statute to notify all relevant registered owners of the defect. *See* 49 U.S.C. §§ 30118(c), 30119(d). The company has assumed as well the statutory duty to "remedy the defect or noncompliance without charge when the vehicle or equipment is presented for remedy." 49 U.S.C. § 30120(a). And Toyota has subjected itself to the continuing oversight of (and potential penalties imposed by) NHTSA. 49 U.S.C. §§ 30120(c)-(e), 30165(a); 49 C.F.R. § 1.50(a).

Given all this, there remains not enough value left for the courts to add in this case to warrant carrying on with the business of deciding its merits. Congress and the Executive have committed to ensure Ms. Winzler precisely the relief she seeks. At best, we might duplicate their efforts and waste finite public resources in the process. At worst, we might invite inter-branch confusion and turf battles over the details of carrying out an agreed objective. Our intervention would, as well, surely add new transaction costs for Toyota and perhaps reduce the incentive manufacturers have to initiate recalls (as Toyota did here), all while offering not even a sliver of additional relief for Ms. Winzler and members of the class she seeks to represent. Perhaps the lawyers would benefit if this would-be

class action labored on through certification, summary judgment, and beyond. But it's hard to see how anyone else could.

Things might be different if we thought Ms. Winzler would be left without complete relief. While we generally hold a case moot when a coordinate branch steps in to resolve the problem, we don't do so without first accounting for the possibility of failure. If the party seeking relief can show that "there exists some cognizable danger of recurrent violation," some cognizable danger that the coordinate branch will fail and she will be left without a complete remedy, we will continue with the case even in the face of a simultaneous remedial commitment from another branch. *See W.T. Grant*, 345 U.S. at 633. After all, while equity may not require us to duplicate efforts of the other branches it hardly insists we run the risk of leaving a plaintiff without a remedy she's entitled to. In seeking to avoid one set of wrongs (needless duplication and inter-branch disputes) we cannot ignore the possibility of inviting what may be even a greater one (leaving the plaintiff without a remedy in a meritorious case).

To carry the burden of showing a "cognizable danger" of failure, a plaintiff must point us to "something more than the mere possibility" of failure. *Id.*; *see also SEC v. Steadman*, 967 F.2d 636, 648 (D.C. Cir. 1992). This doesn't require the plaintiff to prove an imminent or even a likely danger of failure. All she must show is a "cognizable" danger — one perceptible or recognizable from the evidence before the court. *See* 3 Oxford English Dictionary 446 (2d ed. 1989)

(defining "cognizable" as, among other things, "capable of being known or perceived, or apprehended by the senses or intellect, perceptible"); *see also Mayorga-Vidal v. Holder*, 675 F.3d 9, 14 (1st Cir. 2012) (defining "legally cognizable social group" as one that is "socially visible — that is, generally recognizable in the community"). At the same time, of course, it's not enough merely to speculate about or imagine how our coordinate branches might fail. A plaintiff must identify something more than the mere possibility of failure sufficient to "keep the case alive" for Article III purposes. *See W.T. Grant*, 345 U.S. at 633; *Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009).

Still, though this "cognizable danger" standard poses a relatively modest hurdle, Ms. Winzler's three efforts to clear it clearly fall short.

First, she disputes what facts we, as an appellate court may know about the status of the recall. To show that it rendered this case moot by triggering the Safety Act after the district court entered judgment, Toyota has moved to supplement the record with and asked us to take judicial notice of documents filed with NHTSA and now available on the agency's public website. These materials purport to show that Toyota is already well on its way to completing the recall — and that the phase of the recall covering Ms. Winzler's car is already complete. For her part, Ms. Winzler cautions us against taking notice of the truthfulness of Toyota's papers. She worries that Toyota may have misstated how many owners

and dealers it has notified about the recall, how many and which cars it has fixed so far, or otherwise misrepresented its progress.

All this, however, is beside the point. To find this case prudentially moot, we do not have to (and do not) take notice of the truthfulness of Toyota's statements. All that matters is that materials *purporting* to identify a defect and to announce a recall are on file with NHTSA. This much is enough because, with the *act* of notifying NHTSA of a defect and announcing a recall, Toyota set into motion the statutorily mandated and administratively overseen national recall process. Its filings with the agency obliged it to notify owners, fix their cars, and do so for free, all pursuant to Congress's command and under NHTSA's supervision. 49 U.S.C. §§ 30118-20. So it is that, to find this case moot, we need (and do) only take notice of the existence of filings with NHTSA purporting to identify a defect and announce a recall.

Neither does anyone dispute we may take notice of this much. Fed. R. Evid. 201 allows courts to take judicial notice of facts "at any stage of the proceeding" if the facts are "not subject to reasonable dispute." Everyone before us agrees that Toyota has indeed filed the materials in question with NHTSA and that the contents of those materials purport to show an ongoing recall. And it comes as no surprise that the parties agree. The contents of an administrative agency's publicly available files, after all, traditionally qualify for judicial notice, even when the truthfulness of the documents on file is another matter. *See In re*

- 10 -

*Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990) (discussing judicial notice of the existence and contents, but not truthfulness, of publicly filed documents); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (same).  Neither is it open to question that we may take judicial notice of materials on appeal, or that doing so can wind up rendering a case moot, prudentially or otherwise, during its pendency on appeal.  The very same concerns animating prudential mootness doctrine that counsel us to avoid deciding a case on its merits can also counsel us to avoid a needless district court remand when a case's mootness is readily apparent.  *See United States v. Burch*, 169 F.3d 666, 671 (10th Cir. 1999) (judicial notice may be taken for the first time on appeal); *Jordan v. Sosa*, 654 F.3d 1012, 1020 n.11 (10th Cir. 2011) (encouraging parties to alert this court to developments after a district court's judgment that may render the case moot on appeal); *Ali v. Cangemi*, 419 F.3d 722, 723-24 (8th Cir. 2005) (holding case prudentially moot for the first time on appeal and vacating a district court determination on the merits); *Spangler*, 832 F.2d at 298-99 (same); *United States v. (Under Seal)*, 757 F.2d 600, 601, 604 (4th Cir. 1985) (same).

Second and separately, Ms. Winzler worries that the NHTSA recall process may prove an insufficient remedy because it is a "voluntary" one.  And in one sense she has a point.  Some recalls are initiated "voluntarily" when a manufacturer alerts NHTSA to the defect.  49 U.S.C. § 30118(c).  Others are initiated "involuntarily" when the government discovers a defect after its own

- 11 -

investigation. 49 U.S.C. § 30118(a). Toyota's recall here began pursuant to the voluntary recall subsection. The difficulty for Ms. Winzler is that, whether the recall ball gets rolling under the voluntary or involuntary recall subsection, the result is the same: either way, the same notice, recall, and repair mandates follow; either way, the same oversight and enforcement tools are in play. *See* 49 U.S.C. §§ 30118(e), 30119, 30120, 30165; *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 802 (D.C. Cir. 2006). Far from suggesting some danger of a recurrent violation as she hoped, Ms. Winzler only draws our attention to the fact that voluntary recalls are no more susceptible to failure than involuntary recalls required by the government.

Finally, and moving past how a recall is initiated, Ms. Winzler points to what she perceives to be defects in the statutory recall processes that follow. Should a manufacturer fail to carry out its notice, recall, and repair duties, she acknowledges, NHTSA has discretion to conduct a hearing, investigate, and issue sanctions. *See* 49 U.S.C. §§ 30118(e), 30120(e), 30165; 49 C.F.R. § 557.6. But because NHTSA has so much discretion in how to carry out its enforcement responsibilities, she worries she may not be able to take the agency to court if it fails to pursue Toyota with (what she considers) sufficient vigor. *See* Administrative Procedures Act, 5 U.S.C. § 701(a)(2) (no judicial review when "agency action is committed to agency discretion by law"); *but see McAlpine v. United States*, 112 F.3d 1429, 1433 (10th Cir. 1997) (noting that this is a very

narrow exception to the normal rule of judicial review). Ms. Winzler also worries that if NHTSA falls down on the job, the Safety Act may not afford her a private right of action to pursue Toyota, and notes that at least two other circuits have already held the Act contains no private right of action. *See Ayres v. General Motors Corp.*, 234 F.3d 514, 522 (11th Cir. 2000); *Handy v. General Motors Corp.*, 518 F.2d 786, 788 (9th Cir. 1975) (per curiam). In contrast, she says, a judicial decree would give her a firmer whip hand to ensure Toyota fulfills its recall duties. Firmer because should Toyota falter she can be sure that a federal judge will hear her complaint and penalize the company appropriately.

The limitations Ms. Winzler identifies in the statutory recall procedures may well exist (we have no reason to decide today the APA judicial review question or whether the Safety Act contains a private cause of action). But even so they are insufficient to prove a cognizable danger that the statutory recall process will fail. A plaintiff cannot show a cognizable danger of failure merely by pointing out that the processes Congress and the Executive have chosen to effect a remedy differ from those a judicial decree might provide to reach the same result. After all, there are many ways to skin a cat and many ways to provide an effective equitable remedy. In the context of a recall, reasonable minds might well disagree about the ideal method of notice, the optimal and most realistic timeline for repair, whether repair or replacement is required, where the repairs should occur, and so on, but still wind up all the same with equally

effective results.  No doubt a recognition of this reality is one of the reasons courts of appeals review challenges to the mechanisms of district court equitable decrees simply for abuse of discretion.  *See In re Blinds to go Share Purchase Litig.*, 443 F.3d 1, 8 (1st Cir. 2006) (a district court "shaping an equitable remedy . . . typically has a range of appropriate options.  As long as the court's ultimate choice falls within this range, it will withstand review even if it is not, in the appellate court's opinion, the best option within the range.").  And surely our coordinate branches should enjoy no less (concerns for comity would suggest even more) latitude than our district courts when it comes to selecting what they believe to be the most appropriate path to their stated remedial objective.

To hold otherwise — to allow a case to proceed simply because there happen to be differences between the remedial process a coordinate branch has selected and those we might choose — would not only require us to ignore the reality that there's often no one single right way to go about providing equitable relief to an injured party.  It would also require us to ignore the reality that there are nearly always (if not always) some differences between Executive, Legislative and Judicial remedial procedures given how differently the three branches operate:  by regulation, legislation, and decree.  To presume deficiency from difference would no doubt go a long way, as well, toward spelling the end of prudential mootness doctrine and the comity it is supposed to afford our coordinate branches.  And doing so would involve not a little hubris, suggesting

- 14 -

that our ways are always the best ways. After all, by asking us to proceed with her case only because differences exist between the Act's remedial processes and those that might be included in a judicial decree, Ms. Winzler necessarily asks us to conclude that while Congress sought to provide consumers with an effectual recall regime, the legislation it enacted is actually pretty ineffectual. She also necessarily asks us to assume that while NHTSA is invested with considerable authority to police Toyota's recall effort, it is likely to abdicate that duty.

Of course and again, if a plaintiff can show that the remedial mechanisms selected by a coordinate branch aren't just different but that those differences present a cognizable, a perceptible, a recognizable danger they will lead our coordinate branch to fail to achieve its stated objectives, we can and will proceed with the case. But to justify the expenditure of judicial resources, all in duplication of ongoing efforts by a coordinate branch and in a fashion that necessarily evinces a judgment that those efforts are in some way defective, more than a speculative risk of failure is required.

Yet that is all Ms. Winzler gives us. She doesn't dispute that if the Act works as it is supposed to and NHTSA does its legislatively assigned job she will achieve a complete remedy. She simply worries that the agency may fall down on the job. And her worry is no more than that. It is backed by no evidence suggesting it is anything other than a hypothetical possibility, a conjectural but not cognizable danger. Though she represents to us that Toyota's recall began in

August 2010, Aplt. Br. at 11, she offers no evidence that NHTSA has abdicated its duties in the year and a half that has elapsed since then. She likewise offers us no facts suggesting any perceptible chance the agency won't complete the work it has started. In fact, she offers no evidence suggesting that the agency has ever fallen down on the recall job before in a way that might make us concerned about completing its work in this case: if such evidence exists, she has left us none the wiser for it. *See Nelson*, 570 F.3d at 882.

Because prudential mootness is arguably the narrowest of the many bases Toyota has suggested for dismissal, and because it is sufficient to that task, we have no need to discuss any of Toyota's other arguments for the same result, ranging from standing to Rule 12(b)(6). We grant the motion to supplement the record and for judicial notice to the extent discussed above and, following our general practice when finding a case moot (prudentially or otherwise) on appeal, we vacate the district court's judgment and remand with instructions to dismiss the case as moot. *See Wyoming v. U.S. Dep't of Interior*, 587 F.3d 1245, 1254-55 (10th Cir. 2009).