**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**March 20, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

WESTERN WATERSHEDS PROJECT,

    Plaintiff - Appellant,

v.

INTERIOR BOARD OF LAND
APPEALS; UNITED STATES
DEPARTMENT OF THE INTERIOR,

    Defendants - Appellees,

and

STATE OF UTAH; UTAH SCHOOL
AND INSTITUTIONAL TRUST LANDS
ADMINISTRATION; UTAH
DEPARTMENT OF AGRICULTURE,

    Intervenor Defendants - Appellees.

No. 20-4120

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 1:19-CV-00095-TS)**
_____

Laurence J. Lucas of Advocates for the West, Boise, Idaho (John Persell of Western
Watersheds Project, Hailey, Idaho, and Megan Backsen of Reno, Nevada, with him on
the briefs), for Plaintiff-Appellant.

Rebecca Jaffe, Attorney (Jean E. Williams, Acting Assistant Attorney General, with her
on the brief), Environment and Natural Resources Division, U.S. Department of Justice,
Washington, D.C., for Defendants-Appellees.

Mark S. Boshell, Special Assistant Attorney General (Kaitlin T. Davis, Kathy A.F. Davis, and Anthony L. Rampton, Assistant Attorneys General, with him on the brief), Public Lands Section, Department of Natural Resources, State of Utah Office of the Attorney General, Salt Lake City, Utah, for Intervenor Defendants-Appellees.

_____

Before **MORITZ**, **EBEL**, and **EID**, Circuit Judges.

_____

**EID**, Circuit Judge.

_____

In 2019, Western Watersheds Project sued to challenge the issuance of permits that expired in 2018.[1] The district court dismissed the case for lack of Article III standing. We agree with that decision. Western Watersheds Project's claims were brought against expired permits that had already been renewed automatically by 43 U.S.C. § 1752(c)(2). Moreover, the timing of a new environmental analysis of the new permits is within the Secretary's discretion under 43 U.S.C. § 1752(i). Western Watersheds Project, therefore, lacks Article III standing because its claims are not

---

[1] We have before us an unopposed motion by the appellees "to take judicial notice of the ten renewal permits attached as exhibits A through J to the [] declaration" of Michael Gates. Defendants-Appellees' Motion for Judicial Notice at 4, *Western Watersheds Project v. Interior Bd. of Land Appeals*, No. 20-4120 (10th Cir. May 24, 2021). Because these documents are publicly available and relevant to the parties' arguments regarding subject matter jurisdiction, we grant the motion and take judicial notice of the renewal permits. *See Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1213 (10th Cir. 2012) (noting that "[t]he contents of an administrative agency's publicly available files . . . traditionally qualify for judicial notice, even when the truthfulness of the documents on file is another matter," and "that we may take judicial notice of materials on appeal" (citing *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006))).

2

redressable. Accordingly, we need not address the parties' other arguments and affirm the district court's dismissal of this case.

## I.

In 2007, the Bureau of Land Management ("BLM") prepared an environmental assessment to analyze the impact of new grazing permits on the Duck Creek Allotment. In May 2008, the BLM proposed new grazing permits for the Duck Creek Allotment. Western Watersheds Project challenged the BLM's 2007 environmental assessment and the proposed permits through an administrative protest. On September 12, 2008, based on its finding that the permits would yield no significant environmental impact, the BLM denied Western Watersheds Project's protest and approved issuing new permits for a ten-year term. Western Watersheds Project appealed the BLM's decision through the Department of the Interior's internal review process. On May 16, 2013, an administrative law judge ("ALJ") reversed the BLM's decision. Then, on September 22, 2017, the Interior Board of Land Appeals reversed the ALJ's decision, thereby approving the BLM's decision to deny Western Watersheds Project's protest. In 2018, the permits at issue in this lawsuit expired; and new permits were issued automatically by statute. *See* 43 U.S.C. § 1752(c)(2). The plaintiffs brought this action in 2019, challenging only the expired permits.

## II.

### A.

"The Constitution gives federal courts the power to adjudicate only genuine 'Cases' and 'Controversies.'" *California v. Texas*, 141 S. Ct. 2104, 2113 (2021)

(quoting U.S. Const. Art. III, § 2); *accord Kerr v. Polis*, 20 F.4th 686, 692 (10th Cir. 2021) (en banc) (quoting *California*, 141 S. Ct. at 2113). A fundamental contour of this power is "the requirement that litigants have standing." *California*, 141 S. Ct. at 2113. "The party invoking federal jurisdiction bears the burden of establishing standing." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013)). Here, the plaintiff bears this burden. We review de novo whether the plaintiff has standing. *See Collins v. Daniels*, 916 F.3d 1302, 1311 (10th Cir. 2019) (citing *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013)).

Western Watersheds Project must establish that it has standing—or put differently, that it had the "requisite personal interest . . . at the commencement of the litigation" such that the district court and this court may exert Article III power over the case. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "If 'the plaintiff does not claim to have suffered an injury that the defendant caused *and the court can remedy*, there is no case or controversy for the federal court to resolve.'" *Id.* (emphasis added) (quoting *Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d

4

329, 333 (7th Cir. 2019) (Barrett, J.)).  "Plaintiffs have the burden to demonstrate standing for each form of relief sought."  *Collins*, 916 F.3d at 1314 (quoting *Lippoldt v. Cole*, 468 F.3d 1204, 1216 (10th Cir. 2006)).  "In sum, under Article III, a federal court may resolve only 'a real controversy with real impact on real persons.'" *TransUnion LLC*, 141 S. Ct. at 2203 (quoting *Amer. Legion v. Amer. Humanist Ass'n*, 139 S. Ct. 2067, 2103 (2019)).

**B.**

"Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).  Western Watersheds Project has not met its burden of establishing standing because its claims are not redressable.  Western Watersheds Project does not have a redressable claim related to the 2008 permits because those permits had expired by the time they filed suit, new permits were granted by statute, and the new permits will remain until the Executive Branch undertakes environmental analysis—the timing of which is discretionary.

First, the challenged 2008 permits were no longer operative when this suit was filed.  Western Watersheds Project challenged only the 2008 permits, not the currently effective 2018 permits.  The courts can offer no remedy for the expired permits.  Those permits are gone, so nothing can be done directly about those permits.  A decision about the 2008 permits will have no real-world effect.

Second, the 2018 permits are not a continuation of the 2008 permits because the allegedly incorrect decision to issue the 2008 permits did not infect the statutorily

5

required issuance of the 2018 permits.[2]  The 2018 permits were not a continuation of the challenged decision related to the 2008 permits because they were required by statute.  *See* 43 U.S.C. § 1752(c)(2).  The relevant statute provides the following:

> The terms and conditions in a grazing permit or lease that has expired . . . shall be continued under a new permit or lease until the date on which the Secretary concerned completes any environmental analysis and documentation for the permit or lease required under the National Environmental Policy Act of 1969 [("NEPA")] (42 U.S.C. [§] 4321 et seq.) and other applicable laws.

43 U.S.C. § 1752(c)(2).  Even if the challenged government decisions were legally invalid—which we do not decide—the 2018 permits were still statutorily required.  As Western Watersheds Project noted, some case law in other circuits has found that if the effects of the expired permits continue, the alleged injury might still involve an Article III case or controversy.  *See* Aplt. Br. at 19 (citing *Nat'l Parks Conservation Ass'n v. U.S. Army Corps of Eng'rs*, 574 F. Supp. 2d 1314, 1323 (S.D. Fla. 2008); *Kescoli v. Babbitt*, 101 F.3d 1304, 1309 (9th Cir. 1996); *Montgomery Env't Coal. v.*

---

[2] Notably, Western Watersheds Project stated explicitly in the district court that it was not challenging the 2018 permits.  *See* App'x Vol. I at 150 ("[Western Watersheds Project] has no need to challenge [the new permits] before this court." (second alteration in original) (quoting Plaintiff's Reply Brief on Petition for Judicial Review at 6, *Western Watersheds Project v. Interior Bd. of Land Appeals*, No. 1:19-cv-00095-TS-JCB (D. Utah Aug. 3, 2020), ECF No. 70)).  Thus, Western Watersheds Project waived the argument that it was actually challenging the 2018 permits because they were the same as the 2008 permits.  But Western Watersheds Project did argue that the 2008 permits' effects continued through the same terms still being in effect.  *See* Plaintiff's Reply Brief on Petition for Judicial Review at 3–7, *Western Watersheds Project v. Interior Bd. of Land Appeals*, No. 1:19-cv-00095-TS-JCB (D. Utah Aug. 3, 2020), ECF No. 70.  Thus, although Western Watersheds Project waived a direct challenge to the 2018 permits, we must still address its indirect challenge through its argument that the 2008 permits' effects continued through the 2018 permits.

*Costle*, 646 F.2d 568, 578–79 (D.C. Cir. 1980); *Mine Reclamation Corp. v. Fed. Energy Regul. Comm'n*, 30 F.3d 1519, 1522–23 (D.C. Cir. 1994)). But that out-of-circuit case law neither binds us nor persuades us. The cited case law was written before the 2014 amendments to the Federal Land Policy and Management Act, which required the automatic renewal of the permits under different permits and granted the Secretary discretion on the timing of new environmental analyses. *See* Carl Levin and Howard P. "Buck" McKeon National Defense Authorization Act for Fiscal Year 2015, Pub. L. No. 113-291, § 3023, 128 Stat. 3292, 3762–64 (2014). Moreover, the portions of that case law relevant to this issue purport to discuss mootness rather than standing—which is at issue in this case. A plaintiff must have standing "at the commencement of the litigation," and it must not become moot during the litigation. *Friends of the Earth, Inc.*, 528 U.S. at 189 (quoting *Arizonans for Official English*, 520 U.S. at 68 n.22); *accord Ajaj v. Fed. Bureau of Prisons*, 25 F.4th 805, 811 (10th Cir. 2022) (quoting *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 879 (10th Cir. 2019)). The changes arguably impacting our Article III power over this matter took place before the suit was filed. Thus, standing—not mootness—is the proper legal framework for this case.[3] As a result, the cited out-of-circuit case law does not persuade us that the effects of the 2008 decision continued when Western Watersheds Project filed suit. The statute counsels otherwise. Whatever took place

---

[3] The government's argument in the alternative that this case is moot misses the mark because standing is the proper framework.

with the agency decisions and proceedings surrounding the old permits, the new permits were statutorily required and were issued before this lawsuit was filed.

Third, even if we thought that the 2008 decision's effects continued, this court could not cause a real-world effect through a favorable decision related to those 2008 permits. This court cannot override the Secretary's statutorily given discretion to determine when a new NEPA analysis occurs. *See* 43 U.S.C. § 1752(i) ("The Secretary concerned, in the sole discretion of the Secretary concerned, shall determine the priority and timing for completing each required environmental analysis with respect to a grazing allotment, permit, or lease . . . ."). That is, this court cannot remedy the alleged harm by requiring a new NEPA analysis. And this court cannot provide guidance for a future, indeterminate analysis because that would merely be an advisory opinion about something that is within the Secretary's discretion—something for which there is currently no concrete injury-in-fact. But "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co.*, 523 U.S. at 107. Because of the Secretary's statutorily defined discretion in this matter, we cannot issue a favorable decision regarding the 2008 permits with any real-world effect—which would make such a decision advisory and beyond our power.

Because the 2008 permits no longer existed at the start of this litigation and no evidence suggests that there is any ongoing impact that we could address through a favorable decision, no relief could be granted with respect to those permits that could

redress the harm that has allegedly been caused by the agency. *Cf. Dr. John's, Inc. v. City of Roy*, 465 F.3d 1150, 1156 (10th Cir. 2006) (finding that a plaintiff had established redressability where "the injury would be redressed by a declaration that the ordinance is unconstitutional and an injunction against its enforcement"). Therefore, Western Watersheds Project lacks standing.

**III.**

Because Western Watersheds Project lacks Article III standing, its appeal of the district court's denial of its motion to recuse is moot; and we do not address it. *See Tonkovich v. Kan. Bd. of Regents*, 254 F.3d 941, 946 (10th Cir. 2001) ("Plaintiff asserts that the district judge abused his discretion by refusing to recuse himself . . . . However, our conclusion that Plaintiff's federal and state claims no longer belong in federal court renders the recusal issue, with its request for prospective relief, moot."); *Stein v. New Mexico*, 684 F. App'x 720, 720 n.1 (10th Cir. 2017) ("Also, Mr. Stein appeals the court's denial of his motion to recuse[] and asks this court to reassign the case on remand. . . . However, our conclusion that the court lacks subject matter jurisdiction also renders the recusal issue moot.").[4] We similarly need not reach either party's other arguments or the merits. We AFFIRM the district court's dismissal of this case for lack of Article III standing.

---

[4] Unpublished decisions are not binding precedent but may be cited for their persuasive value. *See* 10th Cir. R. 32.1; Fed. R. App. P. 32.1.